**Eduardo C. ATUESTA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–88–01194–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 18, 1990.

Steve Hebert, Steve Hebert & Associates, Baytown, for appellant.

John B. Holmes, Jr., Dist. Atty., Linda A. West, Ted Wilson, Asst. Dist. Attys., Harris County, for appellee.

Before DUGGAN, MIRABAL and WARREN, JJ.

## OPINION

WARREN, Justice.

A jury found appellant guilty of delivery of cocaine in an amount less than 28 grams. The court assessed punishment at 12 years confinement and a $5000 fine.

In six points of error, appellant claims that:

(1) The trial court should have quashed the jury panel because the State used its peremptory challenges to strike blacks and Hispanics, and made no racially neutral explanation for such strikes.

(2) Because, in the court's charge, appellant's name was spelled "Euardo C. Atuesta" rather than "Eduardo C. Atuesta" as he was indicted and tried, there was no evidence to support the jury's finding of guilt. Also, appellant alleges, there was no evidence to show that appellant's middle initial was "C."

(3) The evidence was insufficient to prove a delivery of cocaine from appellant to J.D. Moreland.

(4) There was insufficient evidence to corroborate the testimony of the accomplice witness.

(5) The jury charge authorized a conviction on several grounds, some of which were not supported by the evidence.

(6) He is entitled to a new trial because a portion of the voir dire was not recorded.

In October of 1986, Houston police officers J.D. Moreland and Curtis Beckham, working as undercover narcotics officers, purchased drugs from Cheryl Welch and Douglas Bain. Welch and Bain periodically lived together in an apartment in Pasadena. On October 6, Moreland phoned Welch and attempted to buy an ounce of cocaine. Moreland was told that there was none in the apartment, but that Welch could obtain some. In response to Moreland's request, Bain called a beeper number in an attempt to reach appellant or his brother, Enrique. Enrique called back and Bain ordered an ounce of cocaine, at a price of $1600, to be delivered to Welch's and Bain's apartment.

Welch notified Moreland that the cocaine would be at the apartment at 3:00 p.m. Appellant was to deliver the cocaine. Moreland and Beckham arrived at the apartment at 3:40 p.m. with sixteen 100 dollar bills, which were given to Bain.

At about 4:15 p.m., appellant arrived and, after staying in the apartment a few minutes, asked Bain to step outside with him. After staying outside briefly (the testimony varies from 30 seconds to five minutes), Bain came into the apartment with a baggie of cocaine, which he handed to Welch, who then handed it to Moreland.

Welch later became an informant for the State and testified at trial. Bain apparently left Texas and was not available at trial.

Appellant first alleges that the trial judge should have quashed the jury panel because the prosecutor made racially motivated peremptory strikes, for which he gave no racially neutral explanation. Appellant is a Colombian national. The prosecutor peremptorily struck three black ve-

nire persons and one Hispanic. One black venire person served on the jury at trial.

Before the jury panel was sworn, appellant moved to dismiss the panel because of racially motivated strikes by the prosecutor. The prosecutor contended that he had to explain his strike of the Hispanic juror, but not the black panel members. He then gave a racially neutral explanation for striking the Hispanic juror and rested. The court then overruled appellant's motion, swore the jury, and recessed until the next morning. Before the jury was seated the next day, on the State's motion, the court allowed the prosecutor to explain his reasons for striking the three black venire persons.

■ Appellant does not contest the sufficiency of the prosecutor's explanations of his strikes, but contends that it was error for the court to allow the prosecutor to reopen after the jury had been sworn, and explain his reasons for his striking the black venirepersons.

■ Article 35.261 of the Texas Code of Criminal Procedure, relied on by appellant, states in part:

> The court shall grant the motion of the defendant for dismissal of the array if the court determines that the defendant is a member of an identifiable racial group, that the attorney representing the state exercised peremptory challenges for the purpose of excluding persons from the jury on basis of their race,....

(Vernon 1989).

■ As appellant points out, the Texas statute, unlike *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), does not require the defendant to be of the same race as the challenged venireperson. Therefore, the prosecutor had a duty to explain his strikes of the black venirepersons, as well as the Hispanic. However, neither does art. 35.261 limit the prosecutor to making his explanations before the jury is sworn. Although the better practice is to require the prosecutor to explain his strikes before the jury is sworn, there are instances in which it might be necessary to allow the prosecutor to ex-

plain a strike after the jury is sworn. Appellant's first point of error is overruled.

Appellant next contends that there is no evidence that "Euardo C. Atuesta" delivered a controlled substance to J.D. Moreland.

■ Appellant's name was misspelled throughout the charge as "Euardo C. Atuesta" rather than "Eduardo C. Atuesta." Appellant argues that, for this reason, the jury actually convicted "Euardo," when all the evidence was against Eduardo. Appellant did not object to the misspelling and, therefore, waived any error. Further, we cannot conceive how the misspelling could be harmful to appellant. Appellant also contends that there was no proof that his middle initial was "C," as alleged. The middle initial is surplusage and is immaterial. *Reed v. State*, 377 S.W.2d 641, 643 (Tex.Crim.App.1964).

This point of error is overruled.

■ Appellant next contends that the evidence was insufficient to prove that he delivered a controlled substance to the undercover officer.

In reviewing this point of error, we must view all of the evidence in the light most favorable to the State, and affirm if any rational trier of fact could have found appellant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *Burks v. State*, 693 S.W.2d 932, 937 (Tex. Crim.App.1985). There was testimony at trial that appellant gave the cocaine to Bain, who in turn gave it to Cheryl Welch, who then handed it to J.D. Moreland. However, the testimony established that no witness actually saw appellant give the cocaine to Bain. Cheryl Welch testified as to the undercover officer's offer to buy cocaine, of her and Bain's contacts with appellant and his brother, and of appellant's appearance at the apartment. She also testified that Bain had the $1600 when he went outside with appellant, and did not have the money when he came back in but, instead, had the cocaine. She further testified that there was no cocaine in the house before Bain brought the baggie in.

The indictment against appellant alleged constructive delivery, as well as actual delivery and an offer to sell. Any of the three allegations constitute a delivery under the Texas Controlled Substance Act. Tex.Health & Safety Code Ann. § 481.002(8) (Vernon Pamp.1990).[1]

■ "Constructive delivery" is the transfer of a controlled substance, either belonging to an individual or under his control, by some other person or agency, at the instance and direction of the individual accused of such constructive transfer. *Daniels v. State*, 754 S.W.2d 214, 220 (Tex. Crim.App.1988). To prove constructive transfer, it must be shown that, prior to an alleged delivery, the transferor had either direct or indirect control of the substance transferred, and must have known of the existence of the transferee. *Id.* at 221–22.

In our opinion, the evidence is such that a rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of a constructive transfer. Appellant's third point of error is overruled.

■ Appellant's next point of error argues that there was insufficient independent evidence to corroborate the testimony of Cheryl Welch, an accomplice witness. He correctly argues that we must subtract the evidence given by Cheryl Welch, and determine whether there is other incriminating evidence that tends to connect appellant with the commission of the offense. *Reed v. State*, 744 S.W.2d 112, 125 (Tex. Crim.App.1988). We are of the opinion that officers Moreland's and Beckham's testimony, that they were present when, in a period of a few minutes, the $1600 was given to Bain, Bain walked outside the apartment with appellant, and returned with a baggie of cocaine, is sufficient to corroborate the testimony of Cheryl Welch. Appellant's fourth point of error is overruled.

Appellant next contends that the jury charge allowed a conviction based on several grounds, some of which were not sup-ported by the evidence. He argues that some of the jurors could have believed that appellant had not constructively delivered the cocaine, the charge upon which he alleges the State based its prosecution, "but somehow thought he delivered [it] by some other means, and based their vote" on that belief.

■ Contrary to appellant's contention, the State may allege different methods of committing an offense, and each of these methods may be submitted alternatively in the jury charge. *Zanghetti v. State*, 618 S.W.2d 383, 386–87 (Tex.Crim.App. [Panel Op.] 1981). Where a general verdict is returned, and the evidence is sufficient to support a finding under any of the counts submitted, no error is shown. *Bailey v. State*, 532 S.W.2d 316, 323 (Tex.Crim.App. 1975); *Hintz v. State*, 396 S.W.2d 411, 414 (Tex.Crim.App.1965).

This point of error is overruled.

■ Finally, appellant contends that he is entitled to a new trial because a portion of the voir dire was not recorded, even though a proper request had been made. He does not direct us to what portion of the voir dire was not recorded, nor does he allege that such omission caused him harm.

Apparently, the remarks and instructions of the trial judge made before the lawyers began voir dire examination were not recorded. Although the omitted remarks should have been recorded, we do not believe that such an omission should result in an automatic reversal, because there was no allegation that the omitted portion contained matters harmful to appellant, or that the omission hampered his appeal in any way. *See Harris v. State*, slip op. at 7, 790 S.W.2d 568, 575 (Tex.Crim.App., 1989). The error is harmless.

The judgment is affirmed.

---

**1.** Formerly Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 1.02(7), ch. 227, § 1, 1985 Tex.Gen.Laws 1102, 1103, *repealed and recodified by*, ch. 678, §§ 1 and 13, 1989 Tex.Gen.Laws 2230. (*See* Vernon's Texas Session Law Service 1989, No. 7 at 2904.)