Luis CARRION, a/k/a "Papo", Appellant,

v.

The STATE of Texas, Appellee.

No. 3–88–162–CR.

Court of Appeals of Texas, Austin.

Dec. 19, 1990.

Fancy H. Jezek, Lackmeyer, Jezek & Holbrook, Killeen, for appellant.

* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex.Gov't Code Ann. § 74.003 (1988).

Arthur C. Eads, Dist. Atty., James T. Russell, Administrative Asst., Belton, for appellee.

Before POWERS, JONES and ONION,* JJ.

ONION, Justice (Retired).

Appellant was convicted of conspiracy with the intent to commit the offense of aggravated delivery of cocaine over 400 grams. *See* Tex.Pen.Code Ann. § 15.02 (Vernon 1974) and 1983 Tex.Gen.Laws, ch. 425, § 6, at 2373 [Tex.Rev.Civ.Stat.Ann. art. 4476–15, § 4.03(c) (Texas Controlled Substances Act), since repealed].[1] Following the jury's verdict, the trial court assessed appellant's punishment at twenty (20) years' imprisonment.

Appellant advances five points of error. He contends the trial court erred in overruling: (1) his motion to quash the indictment because it failed to state an offense, (2) his motion to dismiss the array because some of the State's peremptory challenges were based on race, and (3), (4), and (5) his objections to the court's charge.

The appellant was tried jointly with five co-defendants including Donald Ray Woods. There was a single indictment charging all the defendants with the same offense. Appellant's first point of error urges that the trial court erred in overruling his motion to quash the indictment for its failure to state an offense under the law. This is the same contention as is raised in the companion case of *Woods v. State*, 801 S.W.2d 932 (Tex.App.1990). For the same reasons set forth in *Woods*, we overrule appellant's first point of error.

In his second point of error, appellant advances the contention that the trial court "erred in failing to grant appellant's motion to dismiss the array after the State exercised peremptory challenges to exclude persons from the jury based on their race."

1. *See* now Tex.Health & Safety Code Ann. § 481.112(c) (Vernon Pamp.1990).

After the voir dire examination of the jury panel, but before the jury was sworn, the appellant and the co-defendants urged their motions to dismiss the array. It was stipulated that appellant was a Puerto Rican, a member of the Hispanic race, and thus, a member of an identifiable racial group. There was no showing that any member of the jury was a member of the Hispanic race, or that any Hispanic was struck by the State. The prosecutor was only called upon to make racially-neutral explanations for his peremptory challenges against eight black jurors. After the hearing, the trial court overruled all of the motions to dismiss the array. This hearing was discussed at length in the companion case of *Woods* where the defendant was shown to be a black.

In his brief, appellant relies upon what he terms the improper exclusion of two black veniremen, Bullock and Jenkins, whom this Court found in *Woods* to have been improperly excluded by the State. The appellant recognizes that he seeks to complain of the State's strikes against a different racial group than his own, but he relies upon Tex.Code Cr.P. art. 35.261 rather than the decision in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

In *Batson,* the United States Supreme Court recognized that purposeful racial discrimination in jury selection violates the defendant's right to the equal protection of the law. The Court held that a defendant in a criminal case may make a prima facie showing of purposeful racial discrimination in jury selection by showing: (1) that he is a member of a cognizable racial group; (2) that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the jury panel; and (3) that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude veniremen from the jury on account of their race. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723. In addition, the defendant can rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who have a mind to discriminate. *Id.*

When a prima facie case of discrimination is determined, the burden shifts to the State to come forward with racially neutral explanations as to why peremptory challenges were exercised against veniremen of the same cognizable racial group as the defendant. *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723; *Hill v. State,* 775 S.W.2d 754 (Tex.App.1989, pet. ref'd).

The courts of appeals have read *Batson* literally and have held a defendant cannot complain unless the excluded venireman is of the same race as the defendant. *Easter v. State,* 740 S.W.2d 107, 108–09 (Tex.App. 1987, no pet.); *Kline v. State,* 737 S.W.2d 895, 899 (Tex.App.1987, pet. ref'd); *Catley v. State,* 726 S.W.2d 595, 597 (Tex.App. 1987, pet. ref'd). The Court of Criminal Appeals has apparently left open the question of whether *Batson* prohibits cross-racial strikes. *Salazar v. State,* 795 S.W.2d 187 (Tex.Cr.App.1990).

■ Appellant appears to base his contention solely upon a state statutory provision. *See* Tex.Code Cr.P.Ann. art. 35.261 (1989).

Article 35.261 of the Code of Criminal Procedure provides:

(a) After the parties have delivered their lists to the clerk under Article 35.26 of this code and before the court has impanelled the jury, the defendant may request the court to dismiss the array and call a new array in the case. The court shall grant the motion of a defendant for dismissal of the array if the court determines that the defendant is a member of an identifiable racial group, that the attorney representing the state exercised peremptory challenges for the purpose of excluding persons from the jury on the basis of their race, and that the defendant has offered evidence of relevant facts that tend to show that challenges made by the attorney representing the state were made for reasons based on race. If the defendant establishes a prima facie case, the burden then shifts to the attorney representing the state to

give a racially neutral explanation for the challenges. The burden of persuasion remains with the defendant to establish purposeful discrimination.

(b) If the court determines that the attorney representing the state challenged prospective jurors on the basis of race, the court shall call a new array in the case.

Appellant argues that the foregoing "code requirements" differ from *Batson* in that art. 35.261 does not require that the challenged veniremen and the defendant be of the same race. The appellant appears to rely upon that portion of the statute which requires the trial court to grant the defendant's motion to dismiss the array if the court determines that the defendant has offered evidence of relevant facts that tend to show that challenges to veniremen made by the attorney representing the State were made "on the basis of their race." The importance of this distinction between *Batson* and art. 35.261 is that the language of the statute appears to permit no strike by the State in which race played any part.

In *Atuesta v. State*, 788 S.W.2d 382, 384 (Tex.App.1990, pet. ref'd), the court stated that it was the duty of the prosecutor to explain his strikes under art. 35.261 where a Columbian national defendant challenged the prosecution's peremptory strikes against both black and Hispanic veniremen. In *Atuesta*, the trial court called upon the State to explain its strike of a single Hispanic venireman, not the black panel members who had been peremptorily challenged. The next day, after the jury had been sworn, the trial court permitted the prosecution to explain its reasons for striking three black veniremen. On appeal, the sufficiency of the prosecution's explanations for the strikes was not contested. The claimed error was that the trial court permitted the prosecution to give its explanations for striking the black veniremen *after the jury was sworn.* In holding that art. 35.261 did not limit the prosecution to making its explanation only before the jury is sworn, the court, without more than a look at its language, noted that art. 35.261, unlike *Batson*, "does not require the defen-

dant to be of the same race as the challenged venire person."

In *Oliver v. State*, 787 S.W.2d 170, 173 (Tex.App.1990, pet. granted), the court held that the white defendant might be entitled to relief under art. 35.261 with regard to the State's use of peremptory challenges to exclude eight of nine black veniremen from the jury panel. The court observed the difference in the language between *Batson* and the statute and found no ambiguity in the statute to be construed. The interpretation is seemingly based on the face of the statute alone.

The most common thread running through competing rules for statutory construction is for the judiciary to attempt to effectuate the intent of the Legislature. *Patterson v. State*, 769 S.W.2d 938, 940 (Tex.Cr.App.1989).

Section 312.005 of the Government Code provides:

In interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy.

*See* Tex.Gov't Code Ann. § 312.005 (1988).

Section 311.021 of the Government Code (Intention in Enactment of Statutes) provides:

In enacting a statute, it is presumed that:

(1) compliance with the constitutions of this state and the United States is intended;

(2) the entire statute is intended to be effective;

(3) a just and reasonable result is intended;

(4) a result feasible of execution is intended; and

(5) public interest is favored over any private interest.

*See* Tex.Gov't Code Ann. § 311.021 (1988).

Section 311.023 of the Government Code (Statute Construction Aids) provides:

In construing a statute, *whether or not the statute is considered ambiguous on its face,* a court may consider among other matters the:

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction;

(6) administrative construction of a statute; and

(7) title (caption), preamble, and emergency provision.

Tex.Gov't Code Ann. § 311.023 (1988). (Emphasis supplied).

With this background, we examine the legislative history of art. 35.261. In 1987, the Legislature enacted the statute[2] following the 1986 decision of *Batson.* The original House Bill 65 would have eliminated peremptory strikes altogether.[3] Prior to the bill's first consideration by the House Committee on Criminal Jurisprudence, Representative Larry Evans of Harris County, the bill's sponsor, offered a complete committee substitute, whose language was essentially that of art. 35.261 in its present form. Tape recordings of the first meeting of the House Committee on Criminal Jurisprudence on March 18, 1987, to consider the bill reveal that Representative Evans presented C.S.H.B. 65 and a copy of the *Batson* decision, along with newspaper clippings discussing *Batson* and reversals occasioned by the decision. Evans explained the bill's purpose:

> The committee substitute (C.S.H.B. 65) that is being passed out seeks to codify the 1986 Supreme Court decision, *Batson v. Kentucky,* ... many cases are being remanded and sent back by the appellate courts for failure to comply with the *Batson* requirements. The reason why I seek to have [*Batson*] codified into Texas law is to provide an opportunity for a savings to the taxpayers of the State.... Hearings on Tex.H.B. 65 Before House Committee on Criminal Jurisprudence, 70th Leg., March 18, 1987. (Tape recording available from Texas Legislature.)

On the same date, Steve Capelle, representing the Texas County and District Attorney's Association, testified in favor of C.S.H.B. 65, stressing the need for uniform procedures for holding a *Batson* hearing. He told the committee:

> The problem with the *Batson* decision is the Supreme Court ... to the detriment of every state did not tell us how to go about holding one of those [*Batson*] hearings and what to do if it was determined that strikes were done in a racially biased manner. What Representative Evans' [bill] does is to provide a procedure which the district courts around the State may use [to implement *Batson*].

*Id.*

Capelle later stressed the importance of the requirement that the defendant must show himself to be a member of a "cognizable" or "identifiable" racial group since the defendant could only challenge the strikes against members of his own race. David Shepard, representing the Texas Criminal Defense Lawyers Association, testified on the same date. Shepard agreed with Capelle that the Legislature should include the "racially cognizable group" language in the bill to insure that judges make a finding that the defendant is of the same race as the venire members who have been struck. *Id.*

On April 8, 1987, Representative Evans appeared before the committee and characterized C.S.H.B. 65 as "the bill that codifies *Batson v. Kentucky* into statutory language." Hearings on Tex.H.B. 65 Before the House Committee on Criminal Jurisprudence, 70th Leg., April 8, 1987.

Speaking in support of H.B. 65 on the House floor, Representative Evans explained: "The United States Supreme Court in *Batson v. Kentucky* held that such [racially discriminatory] use of peremptory challenges was unconstitutional. What H.B. 65 does is provide a statutory framework for our courts...." House Floor Debates, 70th Leg., May 12, 1987.

---

**2.** 1987 Tex.Gen.Laws, ch. 751, § 1, at 2685.

**3.** *See* Justice Marshall's concurring opinion. *Batson,* 476 U.S. at 107–08, 106 S.Ct. at 1728–29.

A bill analysis of C.S.H.B. 65 on May 12, 1987, is found in the House Research Organization, Daily Floor Reports, May 5–13, 1987, at 43–44. The bill analysis set forth the holding in *Batson* and stated:

C.S.H.B. 65 would codify the requirements of *Batson v. Kentucky*....

C.S.H.B. 65 would also establish a procedure for the courts to follow to ensure compliance with the *Batson v. Kentucky* decision. Texas trial courts have been following the decision by holding evidentiary hearings at the jury selection level to determine whether the prosecutor used the challenges on a racial basis. Since the Supreme Court did not establish a procedure for handling the problem of discriminatory exclusion of potential jurors, the procedure and hearings used by the trial court now vary. None of the courts really know what to do to avoid reversal on appeal. C.S.H.B. 65 would give the trial courts a procedure to follow in cases in which the defendant claims that jurors were excluded on account of their race. C.S.H.B. 65 would also afford a fairer trial for the defendant and avoid unnecessary appeals.

Senator Craig Washington, the Senate sponsor of H.B. 65, explained the purpose of the bill to the Senate Criminal Justice Committee:

H.B. 65 creates a provision in the Code of Criminal Procedure to put our code in line with respect to the admonition on peremptory challenges to meet the requirements of the United States Supreme Court in *Batson v. Kentucky*. It provides a mechanism by which a judge may enforce the provisions of that law to make it clear so that there won't be a hodge-podge of remedies and difficulty in the trial court in attempting to administer the dictates of *Batson,* and so we

don't end up with cases being reversed because judges don't know how to handle the procedure."

Hearing on Tex.H.B. 65 Before Senate Criminal Justice Committee, 70th Leg. (May 21, 1987).

Despite subtle differences in language, it is clear that it was the intent of the Legislature to codify the *Batson* decision, and to further provide clarifying procedures. In particular, article 35.261 establishes that the remedy for purposeful discrimination is a new jury panel, rather than the disallowance of the improper strikes and the inclusion of the excluded veniremen on the jury.[4]

The courts in *Oliver* and *Atuesta* erroneously focused on only part of the statutory language rather than considering the act as a whole, or considering its legislative history. It would serve no purpose to have the trial court determine, when faced with an article 35.261 motion, whether the defendant is a member of an identifiable racial group, if the defendant may then question the State's peremptory challenges, not only of veniremen of his own race, but of veniremen of all other racial groups as well. If the appellant's interpretation of the statute is correct, then an Hispanic defendant, as in the instant case, could complain of the State's strikes against members of his own racial group and those against blacks, orientals, whites, and others. Every venireman is a member of some race. The State could be called upon to give racially neutral explanations for each and every one of its peremptory challenges. Under such statutory interpretation, the defendant would remain free to exercise his peremptory challenges in the traditional manner without assigning any reason therefor. The defendant could strike, without explana-

---

4. In *Keeton v. State,* 724 S.W.2d 58, 65 (Tex.Cr. App.1987) (Keeton I), the court noted the procedure in effect prior to the enactment of art. 35.261. There the court wrote:

Under *Batson,* supra, if such purposeful discrimination is established, the trial court must remedy the situation. Because of the variety of jury selection practices followed in this nation, the Supreme Court was careful not to specify any exclusive remedy. Therefore,

while it enumerated the two most logical remedies, discharge of the panel and selection of a new jury from a new panel, or disallowing the strike[s] and reinstating the minority jurors; it declined to choose which would be more appropriate in any particular case. Clearly the view of the Court is that individual trial judges have the power to do either. *Batson, supra,* n. 24.

tion, veniremen because they were of the same race as the complaining witness or victim of the crime, while the State could be called upon to explain each of its strikes, regardless of the race of the veniremen. Such interpretation would completely turn the time-honored system of peremptory strikes, Tex.Code Cr.P. arts. 35.14 and 35.-15, on its head. We cannot attribute to the Legislature the intention to cause these consequences.[5] We reject the interpretation of art. 35.261 in *Atuesta* and *Oliver* and urged in appellant's contention. The statute must be read in its entirety in the light of *Batson,* which it sought to codify. The trial court did not err in overruling this Hispanic appellant's *Batson*/art. 35.261 motion because he was not in a position to complain of the State's exclusion of the black veniremen. Appellant's second point of error is overruled.

■ In his third point of error, appellant urges that the "trial court erred in failing to instruct the jury that the acts of Edward Bing Miller could not be considered in determining whether appellant had agreed to commit a criminal offense."

Appellant and Miller were among a number of defendants and co-conspirators accused in the conspiracy indictment. Miller was not, however, tried with the appellant and five other defendants. The indictment alleged the date of the offense as "on or about the 6th day of October 1986, and on other dates subsequent thereto." The indictment set forth twenty-two overt acts on various dates, ranging from October 6, 1986 to January 17, 1988. Appellant argues that officer Michael O'Keefe testified Miller was engaged in the narcotic trafficking, but upon being confronted by the police, agreed to "cooperate" with the police on some date in October 1987. Officer Frank Cortez gave somewhat similar testimony.

The only trial objection, both in oral and written form, to which the appellant calls our attention was:

The Defendant objects to the court's failure to instruct the jury that any and all conduct or overt acts *alleged* to have been committed subsequent to Edward Bing Miller becoming an agent of law enforcement officers and/or agencies shall not be considered by the jury as evidence in support of the alleged agreement to commit the object offense because as an agent of law enforcement he, Edward Bing Miller, did not have the requisite culpable mental state. (Emphasis supplied).

The complaint presented on appeal varies from the specific objection made during trial and presents nothing for review. *Sharp v. State,* 707 S.W.2d 611, 619 (Tex. Cr.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); *see also Thomas v. State,* 723 S.W.2d 696, 700 (Tex.Cr.App.1986); *Vanderbilt v. State,* 629 S.W.2d 709, 721 (Tex.Cr.App.1981). Even if appellant intended to direct our attention to his objection to paragraph IV of the court's charge, *infra,* we observe that it does not comport with the complaint on appeal so as to present the matter for review. Appellant's third point of error is overruled.

■ In his fourth point of error, appellant advances the contention that the trial court erred in overruling his objection to the court's charge "which allowed the jury to convict on a theory not alleged in the indictment." Appellant argues that the charge did not track the language of the indictment and allowed the jury to convict upon proof of an agreement between appellant and one or more of the alleged co-defendants and the alleged named but unindicted co-conspirators rather than all the other defendants and co-conspirators alleged in the indictment. The basic complaint is that the indictment was in the conjunctive and the charge was submitted in the disjunctive.

■ The elements of the offense of criminal conspiracy under Tex.Pen.Code Ann. § 15.02 are (1) a person (2) with intent to

---

**5.** For other concerns involving a strict literal reading of art. 35.261, *see Comment,* Race Discrimination and the Use of Peremptory Challenges: Is *Batson v. Kentucky,* The Sole Motivating Factor for Texas Law?, 41 Baylor L.Rev. 161 (1989).

commit a felony (3) agrees with one or more persons that they or one or more of them will engage in conduct that would constitute the offense, and (4) he or one or more of them performs an overt act in pursuance of the agreement. *See Williams v. State*, 646 S.W.2d 221, 222 (Tex.Cr.App.1983); *see also* 18 Tex.Jur.3d, Criminal Law, § 105 (1982).

The indictment's allegations are as appellant contends—in the conjunctive. The charge, in paragraph I, sets forth the elements of conspiracy and provisions of Tex. Pen.Code Ann. § 15.02(c). The jury was also instructed that it is no defense to prosecution for criminal conspiracy that one or more of the co-conspirators is not criminally responsible for the object offense. In paragraph IV, the "application" paragraph, the court authorized the jury to convict if it found that the appellant "did then and there agree with one or more of" the named co-defendants and other co-conspirators and found from the evidence the other allegations beyond a reasonable doubt.

■ Generally, it is proper to plead in the conjunctive and charge in the disjunctive. *Vasquez v. State*, 665 S.W.2d 484, 486 (Tex.Cr.App.1984), *overruled on other grounds, Gonzales v. State*, 723 S.W.2d 746 (Tex.Cr.App.1987); *Vaughn v. State*, 634 S.W.2d 310, 312 (Tex.Cr.App.1982). *See also Robinson v. State*, 764 S.W.2d 367, 372 (Tex.App.1989, pet. ref'd); *Richardson v. State*, 715 S.W.2d 64, 66 (Tex. App.1986, pet. ref'd). Where jury instructions unequivocally restrict the jury's consideration to only those allegations in the indictment, it is not error for the trial court to charge the jury by the disjunctive "or," rather than by the conjunctive "and" as alleged in the indictment. *Watkins v. State*, 623 S.W.2d 954, 955 (Tex.App.1981, no pet.). *See also Ely v. State*, 582 S.W.2d 416, 421 (Tex.Cr.App.1979).

In *Rojas v. State*, 693 S.W.2d 605, 609 (Tex.App.1985, pet. ref'd), the court wrote:

In ground of error number two, appellant contends that the court's charge was fundamentally defective because it allowed the jury to convict him if it found

that he had participated in a combination *or* in the profits of a combination while the indictment alleged that the defendant had participated in the combination *and* in the profits of a combination. Appellant argues that the court's charge is a diminution of the State's burden of proof and violates the rule announced in *Cosper v. State*, 646 S.W.2d 676, 677 (Tex. App.—San Antonio), *pet. granted per curiam*, 650 S.W.2d 839 (Tex.Cr.App.1983) (remanded for determination of unaddressed grounds of error). We disagree with appellant's characterization. In *Cumbie v. State*, 578 S.W.2d 732, 733 (Tex.Cr.App.1979), (footnote omitted) the court of criminal appeals stated that a diminution of the State's burden of proof occurs where there is "[a]n omission from the court's charge of an allegation in the indictment which is required to be proved...." *We do not view the phrasing of indictment allegations in the conjunctive and jury instructions in the disjunctive as any diminution in the State's burden of proof.* As stated by the court of criminal appeals in *Robinson v. State*, 596 S.W.2d 130, 134 (Tex. Cr.App.1980) (on rehearing), the "conjunctive/disjunctive of pleading and charging has been sanctioned by this Court; fundamental error is not present in such instances." (Emphasis supplied).

The trial court did not err in overruling appellant's objection to the charge that it was in the disjunctive rather than the conjunctive. The fourth point of error is overruled.

■ In his fifth point of error, appellant contends the trial court erred in instructing the jury that members in a criminal conspiracy may change from time to time.

In the abstract or definitional portion of the court's charge, the trial court, in paragraph I, defined the offense of "criminal conspiracy." At the conclusion of the paragraph, the court added the sentence "[M]embership in the criminal conspiracy may change from time to time." Appellant objected that the language in the sentence came from the definition of "combination" found in Tex.Pen.Code Ann. § 71.01(a)(2), a

part of the chapter on organized crime, and not from Tex.Pen.Code Ann. § 15.02. The objection was overruled.

The State agrees the language in the sentence came from § 71.01(a)(2), but argues the use of the sentence in connection with "criminal conspiracy" was not error. The State contends that membership in a conspiracy can change from time to time. It is true that one may enter into a conspiracy after its formation and while it is in progress and participate in the common design and be responsible for acts done in the furtherance of the conspiracy. One may also withdraw from the conspiracy. *See* and *cf. Viera v. State,* 156 Tex.Crim. 631, 245 S.W.2d 257 (App.1952); *Hardie v. State,* 140 Tex.Crim. 368, 144 S.W.2d 571 (App.1940); *Dill v. State,* 35 Tex.Crim. 240, 33 S.W. 126 (App.1895); *United States v. Herron,* 825 F.2d 50 (5th Cir.1987); *United States v. Robertson,* 659 F.2d 652, reh. denied, 665 F.2d 347 (5th Cir.1981); *United States v. Killian,* 639 F.2d 206 (5th Cir.), *cert. denied sub nom., Brunk v. United States,* 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981); *United States v. Michel,* 588 F.2d 986 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979). While the abstract statement should not have been included in the charge, we do not conclude error is reflected.

If error did occur, we note that *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Cr.App. 1985) (Op. on reh'g), states in part:

> If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is "calculated to injure the rights of the defendant," which means no more than that there must be *some* harm to the accused from the error. In other words, an error which has been properly preserved by objection will call for reversal as long as the error is not harmless.... the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.

We find in applying the above test that the error, if any, was not calculated to injure the rights of the appellant and did not result in any harm to the appellant. The objected-to abstract statement was not utilized in applying the law to the facts in the court's charge, nor was it mentioned in jury argument. It was not a contested issue. Appellant's fifth point of error is overruled.

The judgment is affirmed.