The STATE of Texas, Appellee,

v.

William Robert OLIVER, Appellant.

Nos. 334–90, 335–90.

Court of Criminal Appeals of Texas, En Banc.

May 1, 1991.

Kenneth W. Smith, Houston, for appellant.

Patrick O. Hardy, Dist. Atty., Woodville, Robert Huttash, State's Atty. & Matthew W. Paul, Asst. Atty., Austin, for the State.

## OPINION ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW

OVERSTREET, Judge.

Appellant was convicted by a jury of possessing more than 400 grams of phenylacetone and less than 28 grams of methamphetamine. The jury assessed punishment at, respectively, ninety-nine years imprisonment and a $100,000.00 fine, and twenty years confinement and a $10,000.00 fine.[1] These convictions were reversed. *Oliver v. State,* 787 S.W.2d 170 (Tex.App.—Beaumont 1990).

The State's petitions were granted on two grounds: to determine whether indictments returned after the effective date of Article 1.14(b), V.A.C.C.P.,[2] are fundamentally defective if they omit any reference to a culpable mental state, and whether a defendant may challenge, as racially discriminatory under Article 35.261, V.A.C.C.P., the State's use of peremptory strikes on prospective jurors of a different racial group than the defendant's.

■ Both indictments omitted any reference to a culpable mental state, in violation of V.T.C.A. Penal Code, § 6.02(b) and Article 21.03, V.A.C.C.P. Both were returned September 22, 1988. Appellant's motions to quash these indictments made no reference to these defects. On appeal appellant claimed that the failure to allege culpable mental states rendered the indictments fundamentally defective in that no offense was alleged with the result that the trial court never obtained jurisdiction of these cases. The court of appeals agreed, holding that Article 1.14(b) did not apply because purported charging instruments which fail to allege an offense are not indictments within the meaning of Tex. Const., Article V, § 12(b) (1891, amended 1985).

■ Subsequent to delivery of the court of appeals' opinion we held that a document presented by a grand jury to a trial court, purporting to allege commission of an offense, is an indictment under Article 1.14 even though it omits allegations of a required element or elements. *Studer v.*

---

1. The trial court ordered these sentences to run consecutively. The court of appeals held this was error, but did not reform the judgment in light of the finding of other error requiring reversal. The State did not petition for review of this holding.

2. Article 1.14(b) provides:

   If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding.

   Article 1.14(b) applies to any indictment or information presented to the Court on or after December 1, 1985. Acts 1985, 69th Leg., ch. 577, §§ 2, 3.

*State,* 799 S.W.2d 263 (Tex.Cr.App.1990). The court of appeals erred in concluding the charging instruments in these causes were not indictments because they did not have the benefit of our *Studer* decision. Appellant waived the substantive defects in the indictments when he failed to complain of the defects prior to trial in these causes.

■ After the jury was selected, but before it was sworn, appellant presented a motion pursuant to both Article 35.261, V.A.C.C.P., and to *Seubert v. State,* 749 S.W.2d 585 (Tex.App.—Houston [1st] 1988). He argued that neither Article 35.261 nor the right to a jury representing a fair cross-section of the community, under the Sixth Amendment of the United States Constitution as interpreted in *Seubert,* require a defendant to be of the same racial group as panel members who are peremptorily struck by the State before he may challenge those strikes as impermissibly discriminatory. Appellant noted that the State had struck eight of the nine black prospective jurors present among the first 32 people on the panel. The State responded that both Article 35.261 and *Seubert* require that the defendant be of the same race as the persons struck, and the trial court denied appellant's motion without requiring any inquiry into the reasons for the State's strikes.

On appeal appellant abandoned his Sixth Amendment claim in light of this Court's reversal of *Seubert v. State,* 787 S.W.2d 68 (Tex.Cr.App.1990), but pressed his argument that Article 35.261 does not require that a defendant be of the same racial group as panel members whose strikes are challenged as discriminatory. The court of appeals reviewed the language of the statute, without addressing any constitutional issues, and concluded Article 35.261 made no "same race" requirement. However, the court held that in light of the fundamental defects in the indictments, remand for a hearing under Article 35.261 was unnecessary even though such a remand would otherwise be required.

The State asserts that the legislative intent of Article 35.261 was to codify the holding of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which requires the defendant to be of the same race as the prospective jurors who were struck. The State relies on the legislative history of Article 35.261, as reflected in *Carrion v. State,* 802 S.W.2d 83 (Tex. App.—Austin 1990, no pet.). *Carrion* reviewed the language of the statute, relevant provisions of the Government Code, and testimony before committees in both houses of the Legislature which enacted Article 35.261. The Third Court of Appeals rejected the conclusions reached by the courts of appeals in this cause and in *Atuesta v. State,* 788 S.W.2d 382 (Tex.App. —Houston [1st] 1990, pet. ref'd), concluding that the requirement of Article 35.261 that a defendant be "a member of an identifiable racial group," in light of the legislative history of the statute, effectively adopts the "same race" requirement of *Batson.*

■ Subsequent to delivery of all of the above opinions from courts of appeals, the United States Supreme Court held that a defendant has standing to assert the equal protection rights of potential jurors who are improperly prevented from serving as jurors through the discriminatory use of peremptory strikes. *Powers v. Ohio,* —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). We now review the scope of Article 35.261, and whether *Powers* impacts that review.

Article 35.261 provides:

(a) After the parties have delivered their lists to the clerk under Article 35.26 of this code and before the court has impanelled the jury, the defendant may request the court to dismiss the array and call a new array in the case. The court shall grant the motion of a defendant for dismissal of the array if the court determines that the defendant is a member of an identifiable racial group, that the attorney representing the state exercised peremptory challenges for the purpose of excluding persons from the jury on the basis of their race, and that the defendant has offered evidence of relevant facts that tend to show that challenges made by the attorney repre-

senting the state were made for reasons based on race. If the defendant establishes a prima facie case, the burden then shifts to the attorney representing the state to give a racially neutral explanation for the challenges. The burden of persuasion remains with the defendant to establish purposeful discrimination.

(b) If the court determines that the attorney representing the state challenged prospective jurors on the basis of race, the court shall call a new array in the case.

Section 312.005 of the Government Code provides:

In interpreting a statute, a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy.

Section 311.021 of the Government Code (Intention in Enactment of Statutes) provides:

In enacting a statute, it is presumed that:

(1) compliance with the constitutions of this state and the United States is intended;

(2) the entire statute is intended to be effective;

(3) a just and reasonable result is intended;

(4) a result feasible of execution is intended; and

(5) public interest is favored over any private interest.

Section 311.023 of the Government Code (Statute Construction Aids) provides:

In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the:

(1) object sought to be attained;

(2) circumstances under which the statute was enacted;

(3) legislative history;

(4) common law or former statutory provisions, including laws on the same or similar subjects;

(5) consequences of a particular construction;

(6) administrative construction of a statute; and

(7) title (caption), preamble, and emergency provision.

The statute was enacted in 1987, at the first regular session of the Legislature after delivery of *Batson.* Prior to *Batson* the use of peremptory strikes in a racially discriminatory manner could be shown only by demonstrating a systematic use of peremptory strikes by the State to prevent members of a cognizable racial group from serving on juries, see *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Therefore, no procedures existed to allow a defendant to demonstrate discriminatory use of strikes based solely on the strikes made in the case at bar.

As detailed in *Carrion,* 802 S.W.2d, at 87–88, the bill creating Article 35.261 was a committee substitute for one which would have eliminated peremptory strikes altogether. The bill's sponsor in the House indicated he sought to codify *Batson,* and a bill analysis noted the statute would "establish a procedure for the courts to follow to ensure compliance with the *Batson v. Kentucky* decision." The Senate sponsor reiterated the intent to provide uniform procedures to comply with *Batson,* as well as a uniform remedy if a violation were established.

As noted by the court of appeals in this cause, Article 35.261 contains no specific requirement that the defendant be of the same racial group as the panel members whose strikes he is challenging. However, the requirement that the defendant be a member of an identifiable racial group suggests that the Legislature might have intended a "same race" requirement, because every defendant is going to be a member of *some* identifiable racial group or groups.

In interpreting Article 35.261 we must diligently attempt to ascertain legislative intent and consider at all times the old law, the evil, and the remedy, Tex.Gov't Code Ann., § 312.005 (1988), the object sought to be attained, Tex.Gov't Code Ann., § 311.023(1), circumstances under which the statute was enacted, Tex.Gov't Code Ann., § 311.023(2), and legislative history, Tex.Gov't Code Ann., § 311.023(3). It ap-

pears to us that the Legislature intended to create uniform procedures and remedies to address claimed constitutional violations during jury selection. No intent appears to expand on any constitutional rights.

However, *Powers v. Ohio* establishes that defendants have standing to raise the equal protection claims of jurors excluded because of their race. We must presume that compliance with the Constitution of the United States was intended when Article 35.261 was enacted, Tex.Gov't Code Ann., § 311.021(1), and that a just and reasonable result feasible of execution was intended, Tex.Gov't Code Ann., §§ 311.021(3) and (4). We therefore interpret Article 35.261 to allow its invocation by a defendant challenging strikes of prospective jurors of racial groups different from his own. This comports with our perception of the legislative intent to provide procedures and remedies addressing claims of constitutional violations in jury selection, interprets the statute to be in compliance with the United States Constitution as construed in *Powers,* and produces a result that is just, reasonable, and feasible of execution. Although the Legislature cannot be deemed to have foreseen developments in constitutional interpretation, we can construe their intent to enact a statute flexible in interpretation, which did not specifically require diversity of racial groups before Article 35.261 could be invoked.

Although our interpretation of Article 35.261 might have been different prior to delivery of *Powers,* we believe this interpretation should apply to any case not yet final at the time *Powers* was delivered. See *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). As such, the court of appeals reached the correct result on this issue even though appellant did not make the equal protection argument raised in *Powers.*

The judgment of the court of appeals is reversed with instructions to remand said cause to the trial court to conduct a hearing under Article 35.261 pursuant to *Powers v. Ohio,* supra.

1. *See Rose v. State,* 752 S.W.2d 529 (Tex.Cr.App.

McCORMICK, P.J., and CLINTON, WHITE, BAIRD and MALONEY, JJ., concur in result.

BENAVIDES, J., not participating