**Ellery Fredrick GERBER, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–89–01022–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 14, 1993.

Discretionary Review Refused
April 14, 1993.

Brian W. Wice, Houston, for appellant.

John B. Holmes, Dist. Atty., Timothy G. Taft, Jim Buchanan, Asst. Dist. Attys., Houston, for appellee.

Before DUGGAN, COHEN and PRICE *, JJ.

## OPINION

DUGGAN, Justice.

A jury convicted appellant of murder, and the trial court assessed his punishment, enhanced by one prior felony conviction, at 40–years confinement. We affirm.

---

Appellant does not challenge the sufficiency of the evidence to support his conviction; therefore, we briefly state the facts. Appellant, his girlfriend, and the complainant, who were friends, were drinking at appellant's girlfriend's two-story townhome when appellant and the complainant became involved in a fight. Appellant picked up a steak knife, and his girlfriend took it away, sustaining injuries that required surgery to repair the tendons and ligaments in her hand. Everything became quiet, and appellant left the room. Appellant returned a short time later with a gun and fired a shot. The complainant told appellant to "be cool" as the complainant raised his hands and began to back away. Appellant shot the complainant through the left eye, causing his death.

Appellant presented the testimony of one of the police officers who arrived at the scene shortly after the shooting. This officer testified that appellant told him that he thought the gun contained blanks, that the gun "accidentally went off" as he came down the stairs, and that "he didn't intend to shoot but that it was an accident."

The jury was instructed on murder, voluntary manslaughter, involuntary manslaughter, aggravated assault, criminally negligent homicide, and reckless conduct. The trial court also submitted a jury issue on a mistake-of-fact defense that instructed the jury to acquit appellant of murder if it found, or had a reasonable doubt, that he reasonably believed the gun contained blanks. The jury convicted appellant of murder.

The first two points of appellant's nine points of error assert the trial court erred in permitting the State to use its peremptory challenges to exclude five minority veniremembers from the jury in violation of TEX.CODE CRIM.P.ANN. art. 35.261 (Vernon 1989) (point one), and *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (point two).

A defendant has standing to assert the equal protection rights of those

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

who are prevented from serving as jurors through the State's discriminatory use of its peremptory strikes, and the defendant does not have to be of the same race as the excluded jurors to have standing to assert their rights. *Powers v. Ohio,* —— U.S. ——, ——, 111 S.Ct. 1364, 1370–74, 113 L.Ed.2d 411 (1991); *State v. Oliver,* 808 S.W.2d 492, 496 (Tex.Crim.App.1991); *see Atuesta v. State,* 788 S.W.2d 382, 384 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd); *see also Batson,* 476 U.S. at 96, 106 S.Ct. at 1723. Once a defendant makes a prima facie case of purposeful discrimination in the State's use of its peremptory challenges, the burden shifts to the State to present race-neutral explanations for its challenges. *Batson,* 476 U.S. at 97, 106 S.Ct. at 1723; *Oliver,* 808 S.W.2d at 495; *see Atuesta,* 788 S.W.2d at 384; Tex.Code Crim.Proc.Ann. art. 35.261 (Vernon 1989).

■■■ An appellate court reviews the trial court's factual findings with "great deference" to determine whether they are clearly erroneous. *See Whitsey v. State,* 796 S.W.2d 707, 726 (Tex.Crim.App.1989) (op. on reh'g); *Moore v. State,* 811 S.W.2d 197, 199 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd). We review the evidence in light of the entire record, and in the light most favorable to the trial court's findings. *See Whitsey,* 796 S.W.2d at 721 (this analysis is synonymous with the "clearly erroneous" standard); *Moore,* 811 S.W.2d at 199. An appellate court should not substitute its judgment for the trial court's determination of a witness' credibility and the weight to be given the testimony unless objective or other extrinsic evidence contradicts the witness' testimony, or the witness' testimony is internally inconsistent or implausible on its face. *See Whitsey,* 796 S.W.2d at 722;[1] *Moore,* 811 S.W.2d at 199.

In a *Batson* context, the trial court's role is the most important and the most difficult; it must "consider whether the [prosecutor's] facially neutral explanations are contrived to avoid admitting acts of group discrimination" by considering factors such as those set out in *Keeton v. State,* 749 S.W.2d 861, 865–69 (Tex.Crim.App.1988) (sets out types of evidence that a trial court should consider in determining whether a defendant establishes a prima facie case of purposeful discrimination, whether the State overcomes the presumption of discrimination with race-neutral explanations, and whether the State's race-neutral explanations are a sham).

■■■ Our role is to apply a deferential standard of review to the trial court's findings by considering the voir dire process, including the racial constitution of the venire, the prosecutor's neutral explanations, and appellant's rebuttal and impeaching evidence. *See Whitsey,* 796 S.W.2d at 726; *Keeton,* 749 S.W.2d at 869–70. The race of the victim of the offense and the State's witnesses may also be relevant considerations. *See Dewberry v. State,* 776 S.W.2d 589, 591 (Tex.Crim.App.1989). Where the trial court's findings are based solely on credibility determinations, those findings are largely "insulated" from appellate review. *See Whitsey,* 796 S.W.2d at 722.

Prior to the jury being sworn, appellant raised a *Batson* objection. At the *Batson* hearing, it was established the State used five of its 10 peremptory challenges on minority veniremembers Mouton, Carpenter, Gutierrez, Levi, and Ramsey.[2] One minority member served on the jury. Appellant, the complainant, and the eyewitness, who was appellant's girlfriend, are white. Therefore, this is not a case where an all-white jury tried a black defendant for a crime committed against a white per-

---

1. In *Whitsey,* the appellant's conviction was reversed because, among other things, there was objective evidence of disparate treatment that rebutted the prosecutor's race-neutral explanations. *Whitsey,* 796 S.W.2d at 726–28.

2. The State points out that appellant's counsel is black, and that he used all ten of his peremptory challenges on whites. Appellant's counsel responded that this statement by the prosecutor

demonstrated a racist attitude on his part. Appellant's counsel was not required to present race-neutral explanations for his strikes because this case was tried before *Georgia v. McCollum,* —— U.S. ——, ——, 112 S.Ct. 2348, 2359, 120 L.Ed.2d 33 (1992), which held that defendants may not use race as the basis for peremptory strikes.

son. *See Dewberry*, 776 S.W.2d at 591. The trial court ruled that appellant established a prima facie case of purposeful discrimination, and directed the prosecutor to explain his reasons for striking the five minority veniremembers. Following the prosecutor's explanations, and appellant's cross-examination of the prosecutor, the trial court denied appellant's *Batson* claim.

Mouton

During voir dire, Mouton, a black male, told the prosecutor he had been on a criminal jury that had been able to reach a verdict in a "pollution case," and he had testified as a character witness for a friend accused of DWI. The prosecutor explained he peremptorily struck Mouton based on his history of being a character witness for a friend in a DWI case.

On cross-examination, the prosecutor testified that Mouton's prior jury service had nothing to do "with any substantial issue that would be put before the jury concerning this case," and was only one of the factors he considers in making his strikes.

Q.: Any issues of his [Mouton] being involved in having anything to do with any substantial issue that would be put before the jury concerning this case?

A.: His prior jury service. Is that what you're asking?

Q.: Yeah.

A. No, sir. Prior jury service is one of the many issues that is considered when I'm making my strikes. I also struck Juror number 30 who is a white male, 31 years of age who was a prior juror in a possession of a controlled substance case, which indeed was a criminal case. So it is an issue that I take into account when I'm making my strikes. It is not something that I base my total strikes on.

Q.: So you're saying that juror had prior criminal jury experience is jurors you normally strike.

A.: No. I'm not saying that at all. I'm saying that it is one of the factors that I weigh when I'm determining which people to strike.

The trial court indicated the prosecutor's explanation, that he struck Mouton because he was a character witness for a friend in a DWI case, was "a little questionable."

■ Appellant argues the prosecutor failed to ask Mouton any meaningful questions that supported his later explanation for challenging him. This is a factor the trial court should consider in determining whether purposeful discrimination is shown, but it is not dispositive. *E.g., Keeton*, 749 S.W.2d at 868.

■ A potential juror who previously testified as a character witness for an accused in a criminal case might be biased against the State. Moreover, since appellant's questions on cross-examination went only to the prosecutor's consideration of prior jury service in exercising peremptory challenges, the prosecutor's explanation, i.e., that he struck Mouton because Mouton was a character witness for a friend in a criminal case, went unrebutted. *See Keeton*, 749 S.W.2d at 871–72 (prosecutor's facially "race-neutral" explanation was unrebutted) (Teague, J., concurring). Moreover, there is no evidence that white persons with the same or similar characteristics as Mouton were not struck, while there is evidence that at least one white person with the same or similar characteristics as Mouton was struck. *See id.* at 868 (disparate treatment is evidence that can be used to show sham or pretext). The trial court's finding is based on the prosecutor's testimony, which is uncontradicted by objective or other extrinsic evidence of disparate treatment or other racial discrimination. *See Whitsey*, 796 S.W.2d at 722.

Carpenter

The prosecutor testified he struck Carpenter, a black male, because he wore sunglasses during voir dire that prevented the prosecutor from being able to tell whether his eyes were open, or whether he was looking at the questioner during voir dire. The prosecutor admitted he did not ask Carpenter a single question during voir dire except for the questions that were generally put to the panel. The prosecutor also testified he struck a white juror because he wore a tee shirt that had "MAD"

on it, referring to *Mad Magazine* and not to *Mothers Against Drunk Driving*.

■ Appellant argues the evidence shows the prosecutor contrived a race-neutral explanation for striking Carpenter, because the prosecutor failed to ask Carpenter any meaningful questions about his choice of eyewear and whether it would affect his ability to be a fair and impartial juror. Lack of meaningful questions to the challenged juror is a relevant factor for the trial court to consider, but it is not dispositive. *See Keeton*, 749 S.W.2d at 868. The prosecutor presented a race-neutral explanation for his strike of Carpenter, and other evidence that he struck a similarly situated white male. *See id.* The trial court's finding is based on the prosecutor's testimony, which is uncontradicted by objective or other extrinsic evidence of racial discrimination. *See Whitsey*, 796 S.W.2d at 722.

Gutierrez

■ The prosecutor testified he struck Gutierrez, an hispanic male, because Gutierrez was a minister and the prosecutor generally did not keep ministers on juries. On cross-examination, the prosecutor said he was concerned with Gutierrez' "ability to forgive." The prosecutor also seemed to testify he would not have struck Gutierrez if the jury was not going to assess punishment.[3]

Appellant argues the State's failure to engage Gutierrez in any meaningful questioning compels the conclusion the prosecutor's explanation was a sham. Appellant also argues Gutierrez' "ability to forgive" was irrelevant since the trial court was to assess punishment. Appellant also argues the prosecutor made no showing on how Gutierrez being a minister impacted on his "ability to forgive." Appellant argues the prosecutor's explanation for striking Gutierrez is an example of an explanation "based on a group bias where the group trait was not shown to specifically apply to the challenged juror."

These are factors a trial court should consider, but they are not dispositive. *See Keeton*, 749 S.W.2d at 868. Here, the trial court's finding of no purposeful discrimination is based on the prosecutor's race-neutral explanation unrebutted by objective or other extrinsic evidence of racial discrimination. *See Whitsey*, 796 S.W.2d at 722.

Levi

■ During voir dire, Levi, a 23–year–old black male, testified he had been the victim of a robbery that was still pending in a Harris County district court. The prosecutor testified that he struck Levi because he was 23 years old, that he strikes almost every juror under age 25, and that he also struck a 25–year–old white male in this case. On cross-examination, the prosecutor testified that a person who is the victim of a crime would be the type of juror favored by the State "in many cases," and that Levi never gave him any "negative expressions" during voir dire.

Appellant argues the prosecutor's explanation is suspect because he did not strike two white veniremembers who were ages 27 and 28. However, the prosecutor testified he generally struck persons under 25 years old. The evidence that the prosecutor did not strike the two whites, who were ages 27 and 28, does not show disparate treatment.

Appellant relies on *Whitsey*, where the defendant proved racial discrimination by showing, among other things, that the prosecutor struck a minority veniremember because she was the "approximate age" of the defendant, but did not strike whites who were also the "approximate age" of the defendant. *Whitsey*, 796 S.W.2d at 715, 726–28. That is not the situation here. Here, the prosecutor did not testify he struck persons the "approximate age" of 25; he testified he generally struck people under age 25. There is evidence that he struck a 25–year–old white male, and no evidence he failed to strike whites under 25 years old.

Appellant also argues the prosecutor failed to ask Levi any meaningful ques-

---

**3.** The trial court assessed punishment in this case.

tions, and the prosecutor's reason for striking him presents a classic example of an explanation based on a group trait without any showing the trait applied to Levi. These are factors the trial court should consider, but they are not dispositive. *See Keeton,* 749 S.W.2d at 868. The trial court's finding is based on the prosecutor's race-neutral explanation unrebutted by objective or other extrinsic evidence of racial discrimination. *See Whitsey,* 796 S.W.2d at 722.

Ramsey

 During voir dire, Ramsey, a black female, testified she was a social worker, and her mother had been murdered by her second cousin in another county where the case was still pending. Ramsey said these factors would not affect her impartiality as a juror. Ramsey also testified she had testified for the State in a child abuse case. Following voir dire, Ramsey told the trial court she could be a fair juror.

The prosecutor testified he struck Ramsey because he generally did not keep social workers on juries. The prosecutor also testified he struck Ramsey because she had been a witness in a child abuse case, and her mother had been murdered by a family member. On cross-examination, the prosecutor admitted he did not strike a white veniremember whose close friend was murdered by a stranger. The prosecutor distinguished the two situations by explaining the murder involving the unstruck white juror did not involve family members being the victim and the accused.

Q.: And as to [Ramsey], is it not true that shows the same type of experience as [the unstruck white juror] in terms of personal experience with persons being murdered?

A.: No, I can't say that's true.

Q.: Did not [the unstruck white juror] say he had experience with a friend that was murdered?

A.: If counsel will recall [the unstruck white juror] indicated that he had a close friend that was murdered by a total stranger, whereas [Ramsey] had her mother murdered by a relative. In an-

swer to your question, the experience is they were related and are not the same.

Appellant argues the prosecutor's exclusion of Ramsey and his failure to strike the other white juror smacks of disparate treatment. We disagree. On cross-examination, the prosecutor presented a race-neutral explanation on why he treated Ramsey differently from the unstruck white juror. Under the facts of this case, where the appellant was accused of killing a friend, the trial court was entitled to find the prosecutor rebutted any inference of disparate treatment. The possibility that Ramsey might have identified with appellant, because her second cousin killed her mother, was a case-related, race-neutral explanation. Also, this Court has held the State's "legitimate hunch" that social workers are not the type of jurors the State wants is race-neutral. *See York v. State,* 764 S.W.2d 328, 331 (Tex.App.— Houston [1st Dist.] 1988, pet. ref'd).

Appellant's first and second points of error are overruled.

 Appellant's third through seventh points of error claim the trial court erred in denying appellant's request that the court's charge apply the mistake-of-fact defense to the lesser included offenses of voluntary manslaughter (point three), involuntary manslaughter (point four), aggravated assault (point five), criminally negligent homicide (point six), and reckless conduct (point seven).

The charge applied the mistake-of-fact defense to murder, and the jury convicted appellant of murder. Therefore, the jury never had an occasion to consider the lesser included offenses, and appellant suffered no harm from the absence of the mistake-of-fact defense to the lesser included offenses. *See Smith v. State,* 744 S.W.2d 86, 94–95 (Tex.Crim.App.1987) (even if jury charge on guilt was erroneous, because there was no converse charge following paragraph which applied law to lesser included offense of murder, reversal was not required since the jury found defendant guilty of capital murder and never had occasion to consider the lesser included of-

fense); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g).

Appellant's third through seventh points of error are overruled.

Appellant's eighth point of error asserts the trial court erred in denying his request for a jury issue on voluntary conduct pursuant to Tex.Penal Code Ann. § 6.01(a) (Vernon Supp.1993).

 A defendant is entitled to a jury issue on the voluntariness of his conduct if the evidence raises the issue. *See Williams v. State,* 630 S.W.2d 640, 644 (Tex.Crim.App.1982) (op. on reh'g). A person acts voluntarily when his conduct "includes, inter alia, a voluntary act and its accompanying mental state." *Joiner v. State,* 727 S.W.2d 534, 537 (Tex.Crim.App. 1987).

Appellant argues that his statement to the officer, who first arrived at the scene, that "it accidentally went off" and "he didn't intend to shoot but that it was an accident" raised the issue of the voluntariness of his conduct. We disagree, and hold appellant was not entitled to a jury issue on involuntary conduct. In *Joiner,* 727 S.W.2d at 537, testimony that the defendant stated "it was an accident" after he shot the victim did not raise the issue of the voluntariness of his conduct. In upholding the trial court's refusal to instruct on voluntariness, *Joiner* noted that "[t]here was no evidence of a scuffle, of the deceased's striking [appellant] or the gun, or of any other movement not willed by appellant." *Id.* at 537. Likewise, in our case, no evidence showed that appellant acted involuntarily, i.e., under force externally applied.

Appellant's eighth point of error is overruled.

Appellant's ninth point of error asserts the trial court's charge, applying the mistake-of-fact defense to the case, was an improper comment on the weight of the evidence.

The mistake-of-fact defense instructed the jury to acquit appellant of murder if it found he had a reasonable belief the gun contained blanks. He appears to argue the charge should also have instructed the jury to acquit him of murder if it found he had a reasonable belief the gun contained *some* blanks. However, appellant directs us to nowhere in the record where anyone testified appellant thought the gun contained some blanks. Tex.R.App.P. 74(f). Therefore, appellant was not entitled to an instruction on whether he reasonably believed the gun contained some blanks.

Appellant's ninth point of error is overruled.

The judgment is affirmed.