COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JOSE PENA, | § | No. 08-09-00095-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 168th District Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC#20080D01439) |
| | § | |

**O P I N I O N**

Jose Pena was convicted of aggravated robbery, attempted aggravated kidnapping, and two counts of aggravated assault with a deadly weapon. We reform the judgment in part and affirm the judgment as so reformed.

**FACTUAL SUMMARY**

On June 22, 2006, Marlene Brown parked her vehicle in a handicapped "spot" outside of a craft store. Her granddaughter, Lauren Miranda, was in the backseat of the car. Appellant, while in possession of a knife, handcuffs, and latex gloves, approached as Brown opened her car door and attempted to exit the vehicle. He positioned himself between Brown and the car door, placed a knife to Brown's neck, and said, "I have a knife. I've never killed anybody before, but I'm desperate." While holding the knife to Brown's neck, Appellant instructed her to "move over" but Brown informed him that she could not do so because of her handicap.[1] Appellant then attempted to force Brown back into her vehicle and moved in a manner indicating he intended to drive. He demanded

_____

[1] The record reflects that Brown's car had a center console such that she would have needed to climb over it as opposed to scooting across the front seat.

Brown's cell phone and took it so that she could not call for assistance. Appellant next attempted to enter the backseat of the vehicle where Miranda was seated, and Brown told her granddaughter to run. Miranda saw Appellant hold the knife "harder" against Brown's neck. Appellant directed Miranda to stay, and she complied. When Brown saw some people leaving the craft store, she activated her car's emergency alarm and Appellant ran away.

Juan Hampton, a store manager, was alerted by the alarm. He saw a panic-stricken woman pointing at Appellant. Hampton pursued Appellant, who approached a second female driver, told her that he needed her vehicle, and asked that she open her car door. Hampton warned the driver not to open her door, and told her to leave and call the police. Appellant then proceeded to the middle of the street where he stepped in front of a third vehicle – a van occupied by children and driven by a woman – and again attempted to command the driver to stop the vehicle and force his way into the van. Hampton, who was approximately ten to fifteen feet away at the time, observed the driver kicking Appellant. Hampton told her to drive away because Appellant was trying to steal her vehicle. At that point, Hampton saw something fall to the ground from Appellant's pocket. Appellant walked aggressively toward Hampton, told Hampton to get away, and asked Hampton what he was doing, what he wanted, and whether he wanted Appellant to kill him.[2] Hampton saw Appellant pull a knife out of his pocket and aim it at him. Seeing the blade of the knife and fearing for his life, Hampton positioned himself behind a tree. Appellant yelled that he was going to kill Hampton before running toward another parking lot. Hampton picked up the item that had fallen from Appellant's pocket – Brown's cell phone – and continued to pursue Appellant so that he could assist law enforcement. After observing Appellant attempt to steal yet another vehicle, Hampton

_____

[2] While the distance between Appellant and Hampton was demonstrated in court, the distance was not quantified in the record.

used Brown's cell phone to call police and assisted them in locating Appellant.

## DOUBLE JEOPARDY

Initially, we address Appellant's first issue which alleges double-jeopardy violations. Specifically, Appellant complains that by being convicted of aggravated robbery and aggravated assault against Brown, he is being punished twice for a single offense. According to Appellant, aggravated assault is a lesser-included offense of aggravated robbery, and therefore, a conviction for both violates the Double Jeopardy Clause. The State concedes that Appellant's convictions for both offenses violate Appellant's double-jeopardy rights.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution protects an accused against a second prosecution for the same offense for which he has previously been acquitted or convicted, and also protects him from being punished more than once for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Littrell v. State*, 271 S.W.3d 273, 275 (Tex.Crim.App. 2008). The Double Jeopardy Clause is made applicable to the states through the Fourteenth Amendment to the United States Constitution. *Brown*, 432 U.S. at 164; *Littrell*, 271 S.W.3d at 275.

To determine whether multiple punishments violate the Double Jeopardy Clause, we compare the elements of the offenses as pled in the indictment. *Littrell*, 271 S.W.3d at 276, *quoting Hall v. State*, 225 S.W.3d 524, 525 (Tex.Crim.App. 2007) *and Bigon v. State*, 252 S.W.3d 360, 370 (Tex.Crim.App. 2008) (to determine "whether two crimes are the same for double-jeopardy purposes, [courts] focus on the elements alleged in the charging instrument"). As indicted in this case, Count IV (aggravated assault) is a lesser-included offense of Count I (aggravated robbery). *See Watson v. State*, 605 S.W.2d 877, 884 (Tex.Crim.App. 1979); *Elizondo v. State*, No. 01-07-00743-CR, 2009 WL 276754, at *3 (Tex.App.--Houston [1st Dist.] Feb. 5, 2009, pet. ref'd) (not designated

for publication); *Jefferson v. State*, 144 S.W.3d 612, 614 (Tex.App.--Amarillo 2004, no pet.) (cases which hold aggravated assault to be a lesser-included offense of aggravated robbery). Because aggravated assault is a lesser-included offense of aggravated robbery, Appellant's conviction for aggravated assault violates double jeopardy. *Brown*, 432 U.S. at 165; *Littrell*, 271 S.W.3d at 275; *Watson*, 605 S.W.2d at 884.

When a defendant is subjected to multiple punishments for the same conduct, the remedy is to affirm the conviction for the most serious offense and vacate the other convictions. *Bigon,* 252 S.W.3d at 372-73; *Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex.Crim.App. 2006). We sustain Issue One. Because Appellant was sentenced to eight years' confinement and was assessed a fine of $5,000 for aggravated robbery (Count I), and was sentenced to eight years' confinement for aggravated assault (Count IV), we affirm the conviction for Count I. We reform the judgment to delete the conviction for Count IV. Consequently, because all remaining issues as to Count IV are moot, we overrule Issue Six in its entirety, and overrule Issue Seven as it pertains to Count IV.

## CHALLENGES FOR CAUSE

In his second issue, Appellant complains that the trial court erred when it denied his motion to strike more than forty venire members for cause. To preserve error with respect to a denial of a challenge for cause, an appellant must assert a clear and specific challenge for cause, use a peremptory strike on the complained-of venire member, exhaust his peremptory strikes, request additional peremptory strikes, identify an objectionable juror, and claim that he would have struck the objectionable juror with a peremptory strike if he had one to use. *Allen v. State*, 108 S.W.3d 281, 282 (Tex.Crim.App. 2003); *Sells v. State*, 121 S.W.3d 748, 758 (Tex.Crim.App. 2003); *Gately v. State*, 321 S.W.3d 72, 76 (Tex.App.--Eastland 2010, no pet.); *Barela v. State*, No. 08-02-00492-CR, 2004 WL 2192604, at *10 (Tex.App.--El Paso Sept. 30, 2004, pet. granted) (not designated for

publication) (cases setting forth the steps necessary to preserve error when a challenge for cause is denied).  Here, Appellant used five of his ten peremptory challenges against venire members whom he challenged for cause and used the remaining five peremptory challenges against venire members whom he did not challenge.  Appellant did not request any additional peremptory challenges from the trial court.  Moreover, although three "challenged" venire members were empaneled on the jury, Appellant failed to identify them or any other jurors selected as being objectionable and did not claim that he would have used peremptory strikes against the others had he been able to do so.  *Allen*, 108 S.W.3d at 282; *Barela*, 2004 WL 2192604, at *10.  Because Appellant has failed to preserve error, we overrule Issue Two.

## TRANSLATION BY DETECTIVE

In his third issue, Appellant complains that the trial court erroneously permitted a testifying detective to translate the video recording of his custodial interview with Appellant.  To preserve an evidentiary complaint, a party must make a timely request, objection, or motion stating the grounds for the ruling which the party seeks from the trial court, and unless the specific grounds are apparent from the context, the party must make the request, objection, or motion with sufficient specificity to make the trial court aware of the complaint.  TEX.R.APP.P. 33.1(a)(1)(A); *Resendez v. State*, 306 S.W.3d 308, 312 (Tex.Crim.App. 2009).  Error may not be predicated on a ruling which admits or excludes evidence where no "timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." TEX.R.EVID. 103(a)(1); *Resendez*, 306 S.W.3d at 312.  A party must object to the evidence, if possible, before the evidence is actually admitted.  *Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991).  When this is not possible, the party must object as soon as the objectionable nature of the evidence becomes apparent and move to strike.  *Id.*

During trial, Detective Jose Baca testified that he interviewed Appellant in Spanish and that both audio and video recordings of the interview were made. After the detective advised the court that he had spoken Spanish his entire life, the video recording was admitted into evidence without objection. The State asked Detective Baca if Appellant admitted committing the crime, to which defense counsel objected, "Let's watch the video and find out." After the trial court overruled his objection, counsel then stated, "You can't have the video and the testimony." The trial court noted that the recording was in Spanish and overruled the objection. When counsel complained that "We haven't got a translator here," the trial court overruled the objection and instructed Detective Baca to answer the question.

Detective Baca's testimony continued for two more pages in the record without objection. The video recording was then played for the jury, with Detective Baca providing intermittent translation from Spanish to English, the testimony of which comprised an additional eight pages of the record. At no time did Appellant ever object to the translation of the video recording. It was not until the State had passed the witness and the court had returned from recess that Appellant objected "to the way it's been presented to the jury," declared that the translation should have been made 45 days prior to trial, complained that the detective was not a certified translator, and requested a mistrial. The trial court asked Appellant, "Why didn't you make this objection before the videotape came in and was played? At that time you said, '[N]o objection'." Appellant responded, "Well, I don't object to the content of it. But the thing is that I'm objecting now and asking for a mistrial now that he's done it." The trial court overruled Appellant's objection and denied his motion for mistrial.

The objectionable nature of the evidence was apparent when Detective Baca began translating the videotaped interview from Spanish to English. Because Appellant failed to object

and sufficiently specify the grounds for his objection at that time, Appellant has waived his complaint for appellate review. TEX.R.APP.P. 33.1(a)(1)(A); *Resendez*, 306 S.W.3d at 312; *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex.Crim.App. 1997); *Ethington*, 819 S.W.2d at 858. We overrule Issue Three.

## APPLICATION PARAGRAPHS

In his fourth and fifth issues, Appellant complains of charge error, alleging that the trial court erroneously modified the application paragraphs for Counts I and II from the conjunctive to the disjunctive[3] as he read the charge to the jury, thereby allegedly reducing the State's burden of proof. Appellant did not object to the charge before it was read to the jury and did not object when the trial court modified the charge.

In reviewing complaints of charge error, we first determine whether error exists by considering the charge as a whole, not in isolation. *Miramontes v. State*, 225 S.W.3d 132, 145 (Tex.App.--El Paso 2005, no pet.). When error is found, we next decide whether sufficient harm resulted from the error to require reversal. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984). When a party fails to object to the alleged error, he must demonstrate actual, egregious harm. *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex.Crim.App. 2004); *Almanza*, 686 S.W.2d at 171.

"When an indictment alleges differing methods of committing [an offense] in the conjunctive, the jury may properly be charged in the disjunctive." *Martinez v. State*, 129 S.W.3d 101, 103 (Tex.Crim.App. 2004), *citing Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App. 1991), *cert. denied*, 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992)); *Robinson v. State*, 596 S.W.2d 130, 134 (Tex.Crim.App. 1980). Because the trial court did not err in charging the jury in

---

[3] Here, the indictment alleged different methods of committing the offenses by using *and* exhibiting a deadly weapon that in the manner of its use and intended use was capable of causing death *and* serious bodily injury.

the disjunctive, we find no error in the charge. *Robinson*, 596 S.W.2d at 134. We similarly reject Appellant's assertion that the trial court's conversion of the charge to a disjunctive form improperly reduced the State's burden of proof. The Texas Court of Criminal Appeals has recognized that a diminution in the State's burden of proof occurs when the court's charge omits an allegation in the indictment that is required to be proved. *See Carrion v. State*, 802 S.W.2d 83, 90 (Tex.App.--Austin 1990, no pet.), *citing Rojas v. State*, 693 S.W.2d 605, 609 (Tex.App.--San Antonio 1985, pet. ref'd) ("We do not view the phrasing of indictment allegations in the conjunctive and jury instructions in the disjunctive as any diminution in the State's burden of proof."). Here, Appellant makes no complaint that the charge omitted any allegations from the indictment. We overrule Issues Four and Five.

## LEGAL SUFFICIENCY

In Issues Seven, Eight, and Nine, Appellant complains that the evidence was legally insufficient to support his convictions as to Counts I, II, and III. When assessing the legal sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex.Crim.App. 2009); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007); *Powell v. State*, 194 S.W.3d 503, 506 (Tex.Crim.App. 2006); *Guevara v. State*, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004); *Adelman v. State*, 828 S.W.2d 418, 422 (Tex.Crim.App. 1992); *Levario*, 964 S.W.2d at 294 (it is the appellate court's duty to determine whether the explicit and implicit findings of the jury are rational in a light most favorable to the verdict). We give deference to "the responsibility of the trier of fact fairly to resolve conflicts in the

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 318-19; *Klein v. State*, 273 S.W.3d 297, 302 (Tex.Crim.App. 2008). We consider all of the admitted evidence, whether it was admissible or inadmissible. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007); *Wilson v. State*, 7 S.W.3d 136, 141 (Tex.Crim.App. 1999). The introduction of conflicting evidence does not render evidence insufficient. *Matchett v. State*, 941 S.W.2d 922, 936 (Tex.Crim.App. 1996). When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton*, 235 S.W.3d at 778. Similarly, as fact finder, the jury is entitled to judge the credibility of the witnesses, and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991).

### *Deadly-Weapon Finding*

First, Appellant contends that the evidence was legally insufficient to support the jury's deadly weapon finding as to Counts I and III. Specifically, he complains that the evidence was legally insufficient to warrant the jury's finding that he exhibited a knife or used a knife as a deadly weapon against Brown.

When a defendant uses or exhibits a deadly weapon, or was a party to the offense and knew that a deadly weapon would be used or exhibited, a deadly-weapon finding may be made. *See* TEX. CODE CRIM.PROC.ANN. art. 42.12, § 3g(a)(2) (Vernon Supp. 2010); *Ex parte Huskins*, 176 S.W.3d 818, 820 (Tex.Crim.App. 2005); *Khudanyan v. State*, No. 08-05-00368-CR, 2006 WL 3517856, at *2 (Tex.App.--El Paso Dec. 7, 2006, no pet.) (not designated for publication). A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX.PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon Supp. 2010); *see McCain v. State*, 22

S.W.3d 497, 503 (Tex.Crim.App. 2000) (finding that the mere carrying of a butcher knife during the commission of the offense was legally sufficient for a fact finder to conclude that the "intended use" for the knife was that it be capable of causing death or serious bodily injury and, hence, the evidence was legally sufficient to show that the butcher knife was a deadly weapon under the circumstances). If a person "intends a use of the object in which it would be capable of causing death or serious bodily injury," the object is a deadly weapon. *McCain*, 22 S.W.3d at 503. There is no requirement that the person intend death or personal injury. *Id.*

In *Patterson*, the Court of Criminal Appeals explained that "use" of a deadly weapon means that a "deadly weapon must be utilized, employed, or applied in order to achieve its intended result" and extends to any employment of the deadly weapon, including simple possession of the deadly weapon if the possession facilitates the associated felony. *Patterson v. State,* 769 S.W.2d 938, 941 (Tex.Crim.App. 1989); *see Coleman v. State*, 145 S.W.3d 649, 652 (Tex.Crim.App. 2004). To "exhibit" a deadly weapon, a person need only consciously show or display the weapon or present it for viewing during the felony offense. *McCain*, 22 S.W.3d at 503, *citing Patterson v. State,* 769 S.W.2d at 941 (fact that knife was partially exposed permitted fact finder to rationally conclude that the knife was exhibited during the criminal transaction or that its presence was used by defendant to instill in the victim apprehension, thus reducing the likelihood of resistance during the commission of the offense).

Appellant admitted robbing Brown and holding a knife against her neck to scare her, although he did not want to use it to stab her or kill anyone. Brown testified that Appellant told her he had a knife and, although he had never killed anyone before, he was desperate. Brown saw a bit of silver when he brought the knife to her neck, and as Appellant informed Brown that the situation was serious, he continued to push the point of the knife into her neck. A photograph taken of

Brown's neck after the commission of the offense was admitted into evidence. Although the knife did not cut her, it left markings on her neck.

Brown's granddaughter, who was nine years' old at the time of the offense, testified that she saw Appellant hold the point of a knife to her grandmother's neck. While the child could not see part of the knife because it was covered by Appellant's hand, she did see the blade of the knife, which Appellant pressed "harder" into Brown's neck when the girl tried to get out of the car.

After reviewing the record, we conclude that Appellant did more than merely exhibit a knife. *McCain*, 22 S.W.3d at 503; *Patterson*, 769 S.W.2d at 941. He utilized the knife by holding it against Brown's neck for the purpose of scaring her. *McCain*, 22 S.W.3d at 503; *Coleman*, 145 S.W.3d at 652; *Patterson*, 769 S.W.2d at 941. Viewing the facts in the light most favorable to the verdict, and based on the evidence and reasonable inferences therefrom, we hold the evidence is legally sufficient to support the jury's affirmative finding that Appellant used a deadly weapon, here, a knife, during the commission of both aggravated robbery (Count I) and attempt to commit aggravated kidnapping (Count III). *Jackson,* 443 U.S. at 318-19; *Villarreal*, 286 S.W.3d at 327. We overrule Issue Seven.

### *Imminent Bodily Injury*

In his eighth issue, Appellant challenges the legal sufficiency of the evidence to support the jury's finding that he threatened Hampton with imminent bodily injury in relation to Count II, aggravated assault. Aggravated assault occurs when a person intentionally or knowingly threatens another with imminent bodily injury and uses or exhibits a deadly weapon. TEX.PENAL CODE ANN. § 22.01(a)(2) (Vernon Supp. 2010) (defining assault) and § 22.02(a)(2) (Vernon Supp. 2010) (defining aggravated assault as assault and the use or exhibiting of a deadly weapon during the commission of the offense). The term "imminent" means "near at hand; mediate rather than immediate; close rather than touching; impending; on the point of happening; threatening; menacing;

perilous." *Devine v. State*, 786 S.W.2d 268, 270 (Tex.Crim.App. 1989).

The evidence before the jury showed that as Hampton followed Appellant and came within ten to fifteen feet of him, Appellant approached Hampton in an aggressive manner, asked Hampton if he wanted Appellant to kill him, pulled out a knife and aimed it at Hampton, and said that he was going to kill Hampton. Hampton testified that when he saw the knife blade, he feared for his life and then strategically positioned himself behind a tree. This was legally sufficient evidence to permit a rational trier of fact to find that Appellant committed aggravated assault by threatening Hampton with imminent bodily injury. Issue Eight is overruled.

*Proof of Surplusage*

In his ninth issue, Appellant complains that the evidence was legally insufficient to support the jury's determination that he was guilty of attempt to commit aggravated kidnapping, as set forth in Count III of the indictment, arguing that the State failed to present evidence that Appellant attempted to enter Brown's vehicle. The indictment as to Count III alleged in part: "[Appellant] did then and there attempt to make entry into the driver[']s seat of Marlene Brown's vehicle[.]" Appellant concedes that this language is surplusage, that is, an allegation "not essential to constitute the offense, . . . which might be entirely omitted without affecting the charge against the defendant, and without detriment to the indictment, . . .and may be entirely disregarded." *Burrell v. State*, 526 S.W.2d 799, 802 (Tex.Crim.App. 1975). But he asserts that an exception to the surplusage rule applies here because the language is allegedly descriptive of an element of the offense which thereby required the State to prove the allegation "even though needlessly stated." *Upchurch v. State*, 703 S.W.2d 638, 641 (Tex.Crim.App. 1985), *citing Burrell*, 526 S.W.2d at 802.

Both Appellant's surplusage and *Burrell*-exception arguments fail. In 2001, the Texas Court of Criminal Appeals explicitly overruled both the "surplusage rule" and the *Burrell* exception to the

rule because they conflict with the law of variances and *Malik's* sufficiency standard. *Gollihar v. State*, 46 S.W.3d 243, 256-57 (Tex.Crim.App. 2001); *Santana v. State*, 59 S.W.3d 187, 195 (Tex.Crim.App. 2001) (recognizing that the surplusage rule and the *Burrell* exception were overruled in *Gollihar*); *see Malik v. State*, 953 S.W.2d 234, 239-40 (Tex.Crim.App. 1997). Accordingly, we overrule Issue Nine.

## IMPROPER JURY ARGUMENT

We discuss the next two issues together. In his tenth issue, Appellant contends that the State improperly argued to the jury that the community expected or demanded a guilty verdict during the guilt-innocence phase. In his eleventh issue, he claims that during the punishment phase, the State improperly invited the jury to base its punishment upon "the desires of the people observing the trial" and Brown's granddaughter.

In determining whether the State engaged in improper jury argument, we consider the entire argument presented, not isolated sentences. *Rodriguez v. State*, 90 S.W.3d 340, 364 (Tex.App.--El Paso 2001, pet. ref'd). Proper jury argument consists of: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) a plea for law enforcement. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex.Crim.App. 2000); *Morales v. State*, 11 S.W.3d 460, 463 (Tex.App.--El Paso 2000, pet. ref'd); *Cardona v. State*, No. 08-07-00161-CR, 2009 WL 3153207, at *4 (Tex.App.--El Paso September 30, 2009, no pet.) (not designated for publication).

"[N]ot every reference to victims or the community constitutes an improper appeal to community expectations." *Rodriguez*, 90 S.W.3d at 365. It is true that the State may not argue that the community or some specific component of the community either expects or demands a particular verdict or punishment. *Borjan v. State*, 787 S.W.2d 53, 56 (Tex.Crim.App. 1990); *Rodriguez*, 90

S.W.3d at 365. But as a plea for law enforcement, the State is permitted to argue the impact of the jury's verdict on the community, including the effect that its verdict may have upon a particular segment of the community. *Borjan*, 787 S.W.2d at 56; *Rodriguez*, 90 S.W.3d at 365. As such, the State may address the relationship between a verdict and crime deterrence generally, and may argue that the jury "should deter specific crimes." *Borjan*, 787 S.W.2d at 55; *Rodriguez*, 90 S.W.3d at 365. The State is permitted to ask that the jury "represent the community or to send a message to the community." *Cardona*, 2009 WL 3153207, at *4, *citing Robbins v. State*, 145 S.W.3d 306, 315 (Tex.App.--El Paso 2004, pet. ref'd). In essence, the State may urge the jury to be the voice, rather than the ear, of the community. *Cortez v. State*, 683 S.W.2d 419, 421 (Tex.Crim.App. 1984); *Rodriguez*, 90 S.W.3d at 364.

*Guilt-Innocence Arguments*

At the close of the guilt-innocence phase of trial, the State argued, in part:

This case, when it comes down to it, is simple. He committed four separate crimes on June 22nd, 2006. He threatened Marlene Brown with imminent bodily injury or death when he placed a knife on her throat.

He committed aggravated robbery when he took her phone at knifepoint, and as Detective Baca told you, he did so because he didn't want her calling 911.

He committed aggravated assault against Juan Hampton when he told him that he was going to kill him if he didn't stop following him.

And he committed attempt to commit aggravated kidnapping when he told Marlene Brown to scoot over in her seat because he wanted to take them Lord knows where. And you have more than ample evidence of that. Latex gloves, handcuffs, a handcuff key, a knife. What do you think he was trying to do?

And then he tells you that he doesn't remember most of the day when he first takes the stand, but his selective memory is that at certain points he was abused and everybody except him is lying. Every single person who took the stand is either wrong or lying. The only person who is an admitted liar is this Defendant. And when I asked him if he was aware that he had just admitted judicially in front of everybody else and God that he had committed aggravated perjury, he admitted he

knew that. He's a liar. There is not one word out of his mouth that you can take for granted.

We know his name is Jose Pena, but we know it after investigation. He's none of the other aliases he's taken. This is Jose Pena. Hold him responsible for his actions that day. Hold him responsible because this is your community. This happened on your streets in your town.

Appellant specifically complains that the State's directive, "Hold him responsible because this is your community" and its notation that "[t]his happened on your streets in your town" collectively constituted an invitation to convict him based upon the community's expectations rather than upon the evidence presented at trial. Considering these statements within the context of the State's entire argument, we cannot conclude that these passages support Appellant's position. The State did not argue that the community either expected or demanded a particular verdict. Rather, the State properly pled for law enforcement, asking the jury to serve as the voice of the community. *See Cardona*, 2009 WL 3153207, at *4, *citing Robbins*, 145 S.W.3d at 315; *Cortez*, 683 S.W.2d at 421; *Rodriguez*, 90 S.W.3d at 364. We overrule Issue Ten.

*Punishment Arguments*

In Issue Eleven, Appellant similarly complains that the State asked the jury to punish him based upon community expectations, rather than the evidence, when it argued:

He's a problem. And you know he's a problem. You have the ability now to take care of this problem. You have it, to make this safe; not to kind of make it safe or take a chance on making it safe. You can give those people that are sitting out there and their little girl some peace of mind. You don't have to worry about it. You've got a ton of power here. A ton of power. You know what, make it safe. Give them a little safety. Give them a little peace of mind.

Appellant objects to the State's request that the jury provide peace of mind to "those people" and "their little girl." When read in context, it is clear that the State did not argue that "those people" or "their little girl" expected or demanded a specific sentence. Rather, we consider the State's

argument to be a proper plea for law enforcement. *See Cardona*, 2009 WL 3153207, at \*4, *citing*

*Robbins*, 145 S.W.3d at 315 (the State may request that the jury represent the community). Issue

Eleven is overruled.

## INSTRUCTION TO DISREGARD

During the punishment phase, the State argued:

And here's the other thing you might want to look at. Are his crimes becoming less as time goes on? Are we here on a lesser crime . . . today than we were when he was beating his wife and stealing from people? Or are his crimes escalating? If his crimes are escalating, that may give you some pause. It may make you say, geez, he's not getting better. He's getting worse.

Here's the other thing I want you to do. I want you to be real quiet for a little bit. Be real quiet. You can hear some ticking. The ticking is coming from here, and the thing is we don't know what set that bomb off last time. And I mean it was a bomb that got set off. He had to go 35, 40 minutes from where he lived to go down there and try to abduct some people. And we didn't just hear that he tried to abduct these people. Man, he tried to abduct every woman that he came in contact for about 10 or 15 minutes there. When is the next thing going to set him off? And do you really know sitting there, are you sure you know what even set him off last time?

Appellant objected, "Your Honor, that argument is completely outside the evidence. There's nothing

that they brought in that said that there's a ticking bomb here or there." The trial court sustained

Appellant's objection but denied his request to instruct the jury to disregard.

### *Abduction Complaint*

In his twelfth issue, Appellant claims that, "[t]he trial court erred in refusing to instruct the

jury to disregard the prosecutor's baseless comment that [Appellant] *attempted to abduct every*

*woman he came into contact with* for about 10 to 15 minutes . . . ." (Emphasis added). We first

disagree with the premise that the prosecutor's comment was baseless. The evidence at trial revealed

that Appellant not only attempted to abduct Brown but also approached three other cars and tried to

abduct at least two other women as he attempted to flee the area where he had committed the

underlying offenses. In sum, the State's argument on this point was merely a summation of the evidence. *Jackson*, 17 S.W.3d at 673.

*Time Bomb Complaint*

Appellant also asserts that the trial court erred in refusing to instruct the jury to disregard the prosecutor's arguments referring to Appellant as a "ticking time bomb." He contends that while "the trial court did not err in sustaining [his] objection to this *whole line of argument as being outside of the record*," the trial court's failure to instruct the jury to disregard the argument was error that, when combined with the State's subsequent and allegedly flagrant and inflammatory requests to make the community safe and give "those people . . . . and their little girl some peace of mind," deprived Appellant of any chance of receiving a probated sentence. (Emphasis added).

Again we disagree with Appellant's characterization. The prosecutor's "ticking time bomb" argument was reasonably deduced from, and was supported by, evidence showing that Appellant had committed the underlying offenses, was suffering a mental crisis, had been very unstable, had attempted to end his life, and had begun having hallucinations. *Jackson*, 17 S.W.3d at 673; *Morales*, 11 S.W.3d at 463; *Cardona*, 2009 WL 3153207, at *4. The "ticking time bomb" argument was not meant to be taken literally. Instead, it served as an allegory used for dramatic effect and was a proper deduction based upon the evidence and the nature of the crime. *See Ponce v. State*, 89 S.W.3d 110, 121 (Tex.App.--Corpus Christi 2002, no pet.) ("Dramatic epithets may be used against a defendant during closing arguments as proper deductions based upon the evidence and nature of the crime."), *citing Long v. State*, 823 S.W.2d 259, 270 (Tex.Crim.App. 1991) ("less human than any person with which the jury will ever have contact"); *McKay v. State*, 707 S.W.2d 23, 37 (Tex.Crim.App. 1985) (prosecutor referring to Appellant as a "wolf"); *Easley v. State*, 454 S.W.2d 758, 761 (Tex.Crim.App. 1970) (prosecutor referring to Appellant as a "savage"). As the

prosecutor's argument was not outside the trial record but was a proper deduction from the evidence, the trial court should not have sustained Appellant's objection. Consequently, he was not entitled to the instruction about which he now complains. *See Ponce*, 89 S.W.3d at 121. We overrule Issue Twelve in its entirety and affirm the judgment as reformed.


          ANN CRAWFORD McCLURE, Justice

November 10, 2010

Before Chew, C.J., McClure, J., and Larsen, J.
Larsen, J., sitting by assignment

(Do Not Publish)